[No. B166087. Second Dist., Div. Eight. Apr. 15, 2004.]

TONY MARTINEZ, JR., Plaintiff and Appellant, v.
MASTER PROTECTION CORPORATION, Defendant and Respondent.

COUNSEL

Horowitzk & Clayton, Craig A. Horowitz and Wayne D. Clayton for Plaintiff and Appellant.

Howard M. Rubin for Defendant and Respondent.

OPINION

**BOLAND, J.**—When plaintiff Tony Martinez, Jr. was hired as a salesperson for defendant Master Protection Corporation, doing business as FireMaster, he signed an arbitration agreement providing that all claims related to his employment, including claims for statutory violations, torts and discrimination, would be subject to arbitration. Martinez, whom the trial court ordered into arbitration, contends the arbitration agreement is unconscionable and unenforceable. Martinez also contends the court erred in appointing an arbitrator after the arbitral forum chosen by the parties refused to conduct the arbitration.

We conclude the arbitration agreement is procedurally and substantively unconscionable, permeated with illegality, and unenforceable. We further conclude the trial court lacked authority to appoint an arbitrator after the chosen arbitral forum refused to conduct the arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

FireMaster hired Martinez in Summer 1999. Martinez was terminated by FireMaster in April 2000. In February 2001, Martinez sued FireMaster for alleged Labor Code violations, national origin discrimination in violation of the ·Fair Employment and Housing Act (FEHA), Government Code section 12940 violations, and wrongful termination.

FireMaster moved to compel arbitration based on a July 7, 1999 agreement Martinez was required to sign as a condition of his employment.[1] Martinez opposed the motion, arguing the arbitration agreement was unconscionable

---

[1] The arbitration agreement provides: "The Company and I mutually consent to the resolution by arbitration of all claims or controversies ('claims'), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company . . . . The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status or medical condition, handicap or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and

and unenforceable. The trial court disagreed, granted the motion, and stayed the litigation pending completion of the arbitration.

As dictated by the terms of the arbitration agreement, Martinez submitted his claims to the American Arbitration Association (AAA). AAA, however, twice determined the arbitration agreement did not satisfy the requirements of its rules and due process protocols for employment-related disputes, and refused to conduct an arbitration. AAA specified two reasons for its refusal to arbitrate: (1) FireMaster failed timely to notify AAA of its intent to use the association's services to resolve employment disputes, and had not filed a copy of its alternative dispute resolution plan for such disputes with AAA; and (2) AAA's policy was against conducting arbitrations on employment plans such as FireMaster's, which gave parties less time to assert claims than would otherwise be available by statute.[2]

After AAA refused to conduct the arbitration, Martinez filed a motion to lift the stay of court proceedings and revive the litigation. The trial court denied the motion and appointed a new arbitrator. (Code Civ. Proc., § 1281.6.)

An arbitration was conducted by a retired superior court judge. The arbitrator issued a one-page award, which found Martinez had failed to demonstrate his termination was racially motivated or the result of unlawful retaliation for his complaints about unpaid commissions.

Martinez objected to the award on the ground it failed to satisfy the arbitration agreement's requirement that the arbitrator "render an award and opinion in the form typically rendered in labor arbitrations." The arbitrator then contacted FireMaster's counsel and directed him to prepare the award. FireMaster's attorney did so, and the arbitrator signed the proposed award, as prepared by counsel and without considering Martinez's objections to FireMaster's draft award.

Martinez petitioned to vacate the arbitration award. The court denied the petition, confirmed the award and entered judgment. This appeal followed.

claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance . . . ."

The arbitration agreement specifically excludes claims by Martinez for workers' compensation or unemployment benefits, and any "claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which . . . the Company may seek and obtain relief from a court of competent jurisdiction."

[2] The agreement gives each party six months to notify the other of a claim. After that period, the claim is "void and deemed waived even if there is a federal or state statute of limitations which would have given more time to pursue the claim."

## DISCUSSION

Martinez contends the judgment must be reversed because: (1) the arbitration agreement is unconscionable and unenforceable; (2) the trial court lacked authority to appoint another arbitrator after AAA refused to conduct the arbitration; and (3) the court erred in denying his motion to vacate the arbitration award. Our agreement with the first two contentions obviates the need to address the third.

1. *FireMaster's arbitration agreement is procedurally and substantively unconscionable, permeated with illegality, and unenforceable.*

Martinez insists the arbitration agreement is unenforceable because it contains illegal clauses, is permeated with an unlawful purpose, and its unconscionable provisions cannot be severed or restricted to cure the illegality.

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable.]' [Citation.]" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

Both procedural and substantive unconscionability are required to invalidate an arbitration clause. (*Armendariz, supra,* 24 Cal.4th at p. 122; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1533 [60 Cal.Rptr.2d 138](*Stirlin*).) Procedural unconscionability focuses largely on oppression and the manner in which the agreement was negotiated. (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329 [83 Cal.Rptr.2d 348] (*Kinney*).) Substantive unconscionability, on the other hand, focuses on the terms of the agreement and the presence of overly harsh or one-sided results. (*Id.* at p. 1330.) The two aspects need not be present to the same degree. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

a. *FireMaster's arbitration agreement, presented on a "take it or leave it" basis, is procedurally unconscionable.*

The procedural aspect of the unconscionability analysis focuses on the manner in which the agreement was negotiated (*Kinney, supra,* 70 Cal.App.4th at p. 1329), and, typically, on "the oppressiveness of the stronger party's conduct." (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174 [116 Cal.Rptr.2d 671], fn. omitted (*Mecuro*); *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402 [7 Cal.Rptr.3d 418].) " 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' [Citation.]" (*A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114].)

█ It is undisputed Martinez was required to execute the arbitration agreement as a prerequisite of his employment by FireMaster. The letter confirming FireMaster's offer of employment states that Martinez's signing and acceptance of the arbitration agreement was a specific "condition of employment." No evidence indicates Martinez had any opportunity to negotiate or refuse to sign the arbitration agreement. Indeed, when he informed FireMaster's Human Resources representative he would prefer not to sign the agreement, Martinez was told "[he] could not work at FireMaster if [he] did not sign the document." An arbitration agreement that is an essential part of a "take it or leave it" employment condition, without more, is procedurally unconscionable. (*Armendariz, supra,* 24 Cal.4th at pp. 113–115; *Stirlen, supra,* 51 Cal.App.4th at p. 1534.) The arbitration agreement meets that definition and is clearly adhesive and procedurally unconscionable.

b. *The arbitration agreement is also substantively unconscionable.*

Martinez makes four arguments directed to the substantive unconscionability—that is, the basic fairness—of the arbitration agreement. The agreement is unfairly one-sided because it requires arbitration of all claims of interest to an individual employee, but exempts from arbitration those claims of primary interest to the employer. In addition, the agreement's fee-splitting provision, significantly shortened statute of limitations, and restrictions on discovery, combine to deprive Martinez of any real opportunity to vindicate his rights. We address each of the contentions in turn.

(i) *The arbitration agreement lacks mutuality.*

"An arbitration agreement is substantively unconscionable if it requires the employee but not the employer to arbitrate claims. (*Armendariz, supra,* 24 Cal.4th at pp. 115–121.)" (*McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 100 [134 Cal.Rptr.2d 446].) FireMaster's arbitration agreement does precisely that.

The arbitration agreement requires FireMaster and Martinez to arbitrate claims for wages, compensation and some benefit claims.[3] It also compels both parties to arbitrate state and federal statutory claims, contract and tort claims, and claims of discrimination. The agreement does not encompass claims by Martinez for workers' compensation or unemployment benefits. The agreement also specifically exempts from its terms any "claims by [FireMaster] for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." As to the latter category of claims, FireMaster—but not Martinez—retains the right to pursue its judicial remedies.

■ FireMaster's assertion that "the agreement and the exclusions are mutual lacks merit." This provision of the arbitration agreement is substantively unconscionable. It requires employees to arbitrate the claims they are most likely to assert against FireMaster, while simultaneously permitting FireMaster to litigate in court the claims it is most likely to assert against its employees. Claims for unpaid wages, wrongful termination, employment discrimination and the like invariably are brought by employees, while claims involving trade secrets, misuse or disclosure of confidential information, and unfair competition typically are asserted only by employers. Recently, Division Seven of this district deemed substantively unconscionable an arbitration agreement virtually identical to this one. (*Mercuro, supra,* 96 Cal.App.4th at pp. 175–177.) We agree. "[I]n the context of an arbitration agreement imposed by the employer on the employee, such a one-sided term is unconscionable." (*Armendariz, supra,* 24 Cal.4th at p. 118.) This is particularly true where, as here, the employer has not even advanced any business justification for the lack of mutuality.[4]

(ii) *The arbitration agreement unacceptably imposes costs on an employee which he would not be required to bear in a judicial forum.*

The arbitration agreement requires parties to split the cost of the arbitration and to post fees in advance of the hearing, which Martinez argues poses a systematic disadvantage to him and discourages employees from asserting valid claims.

■ "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally

---

[3] Benefit claims are exempt from this arbitration agreement if they are already subject to another arbitration agreement.

[4] The fact that Martinez is not required to arbitrate benefit claims, or any claim for workers' compensation or unemployment benefits is immaterial. These exceptions "do not turn what is essentially a unilateral arbitration agreement into a bilateral one." (*Mercuro, supra,* 96 Cal.App.4th at p. 176 [workers' compensation and unemployment benefits are covered by their own adjudicatory systems and are not proper subjects for arbitration; benefit and pension claims are exempt only if they are covered by some other arbitration agreement].)

require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz, supra,* 24 Cal.4th at pp. 110–111, italics omitted.) FireMaster concedes the cost-sharing provision is problematic, but insists it is a "non-issue" because it has agreed to modify the agreement and bear the cost of arbitration. FireMaster's purported modification fails to cure this significant defect.

■ First, the "modification" is supported only by a passing reference in FireMaster's memorandum of points and authorities in support of its petition to compel arbitration. FireMaster's attempt to modify the fee provision by way of an unverified statement by its counsel is ineffective. The arbitration agreement is a fully integrated contract which, by its terms requires that "[i]t can only be . . . modified by a writing signed by the parties which specifically states an intent to . . . modify this Agreement." FireMaster's counsel's unilateral presentation fails to comply with this requirement or cure the defect caused by imposing arbitration fees on Martinez. (*Mercuro, supra,* 96 Cal.App.4th at pp. 181–182; *Stirlen, supra,* 51 Cal.App.4th at pp. 1535–1536 [employer cannot unilaterally modify arbitration agreement which, by its terms, was modifiable " 'only by an agreement in writing signed by the parties.' "]; *Ferguson v. Countrywide Credit Industries* (9th Cir. 2002) 298 F.3d 778, 786 [same].)

■ Second, the costs provision in the arbitration agreement is inconsistent with *Armendariz,* which found the risk that a claimant may bear substantial costs of arbitration, not just the actual imposition of those costs, may discourage an employee from exercising the constitutional right of due process. (*Armendariz, supra,* 24 Cal.4th at p. 110.) "The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events. [Citation.]" (*American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391 [54 Cal.Rptr.2d 477].)

■ FireMaster's after-the-fact expression of willingness to amend the arbitration agreement to conform to law is ineffective. "[W]hether an employer is willing, now that the employment relationship has ended [to change a provision of an arbitration agreement so it conforms to law] does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.' " (*Armendariz, supra,* 24 Cal.4th at p. 125, quoting *Stirlen, supra,* 51 Cal.App.4th at pp. 1535–1536; see also *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 280 [132 Cal.Rptr.2d 116] [employer's belated willingness to bear all costs of arbitration proceeding does not alter the fact that the arbitration provision is

substantively unconscionable].) The mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect, notwithstanding FireMaster's belated willingness to excise that portion of the agreement.

> (iii) *The arbitration agreement's provision of a six-month statute of limitations unlawfully restricts an employee's ability to vindicate his civil and statutory rights.*

The arbitration agreement requires the assertion of all statutory and common law claims covered by the agreement within six months of the date when the claim arises. If the party asserting the claim fails to do so, "the claim shall be void and deemed waived even if there is a federal or state statute of limitations which would have given more time to pursue the claim." Martinez correctly contends that the provision imposing a vastly shortened statute of limitations constitutes an unlawful attempt by FireMaster to restrict its employees' statutory rights.

The statutes upon which Martinez's claims are premised provide significantly longer periods of time than six months within which to assert a claim of violation. Specifically, Martinez's claim of national origin discrimination arises out of the FEHA. That statute provides that Martinez's administrative charge must be filed within one year from the date of the discriminatory act, and that he must file any civil action within one year of the date on which the administrative agency issues a "right to sue" letter. (Gov. Code, §§ 12960, subd (d), 12965, subd. (b).) "[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." (*Armendariz, supra,* 24 Cal.4th at p. 101.) Similarly, the Labor Code, which provides the bases for Martinez's causes of action for unpaid wages and penalties, affords an employee three or four years to assert the claims sued upon here. (*Aubry v. Goldhor* (1988) 201 Cal.App.3d 399, 403 fn. 4 [247 Cal.Rptr. 205] [three-year statute of limitations applies to claims of violation of Lab. Code § 203]; *Sequeira v. Rincon-Vitova Insectaries, Inc.* (1995) 32 Cal.App.4th 632 [38 Cal.Rptr.2d 264], [four-year statute of limitations for violations of Lab. Code § 227.3].) If there was any doubt, after *Armendariz,* it is clear that "parties agreeing to arbitrate statutory claims must be deemed to 'consent to abide by the substantive and remedial provisions of the statute. . . . Otherwise, a party would not be able to fully " 'vindicate [his or her] statutory cause of action in the arbitral forum.' " ' " (*Armendariz, supra,* 24 Cal.4th at p. 101, citation omitted.) The shortened limitations

period provided by FireMaster's arbitration agreement is unconscionable and insufficient to protect its employees' right to vindicate their statutory rights.[5]

### The discovery restrictions are severe but not necessarily unlawful.

Finally, Martinez asserts that FireMaster's arbitration agreement which, absent a demonstration of "substantial need," restricts discovery to a single deposition[6] and a document request, improperly and unfairly deprives him of the ability to prepare and prove his case. While agreeing with Martinez's argument in principle, we are unable to conclude such a limitation necessarily prevents Martinez from vindicating his rights.

In *Armendariz,* the Supreme Court acknowledged that "adequate discovery is indispensable for the vindication of FEHA claims." (*Armendariz, supra,* 24 Cal.4th at p. 104.) Employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses . . . ." (*Id.* at p. 106.) On the other hand, discovery limitations are an integral part of the arbitration process. (*Id.* at pp. 105–106, and fn. 11; accord *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1802 [13 Cal.Rptr.2d 678].) Adequate discovery is not synonymous with unfettered discovery. (*Mercuro, supra,* 96 Cal.App.4th at p. 184; *McManus v. CIBC World Markets Corp., supra,* 109 Cal.App.4th at pp. 97–98.) We recognize that, in many employment disputes, restricting a plaintiff to a single deposition and document request could place him at a serious disadvantage if testimony from numerous witnesses is necessary to prepare his case. We also are aware the same restriction could operate to the employer's advantage, because it has ready access to most of the relevant documents and many of the witnesses remain in its employ. Consequently, the employer typically has far less need for discovery in order to prepare for arbitration then the employee. (*Armendariz, supra,* 24 Cal.4th at p. 104.)

However, given the relatively straightforward allegations of misconduct involved in this action, and the possibility that proof of Martinez's Labor Code claims will rest largely on documentation rather than testimony, we are unable to state as a matter of law that FireMaster's "arbitration agreement

---

[5] Indeed, the shortened statute of limitations was a primary reason the AAA found that FireMaster's arbitration agreement violated its rules and due process protocol for arbitrating statutory employment claims, and refused to arbitrate this matter.

[6] Depositions of each party's expert witnesses are excluded from this limitation.

does not afford adequate discovery rights to employees seeking to vindicate statutory rights as required under *Armendariz.*" (*Mercuro, supra,* 96 Cal.App.4th at p. 184.) In view of our conclusion that the lack of mutuality and the cost-sharing and shortened statutes of limitations provisions of the arbitration agreement are each unconscionable, we need not decide that the restricted discovery provision, in and of itself, prevents Martinez from vindicating his rights. Nevertheless, considered against the backdrop of the other indisputably unconscionable provisions, the limitations on discovery do, in our view, compound the one-sidedness of the arbitration agreement.

 c. *The unconscionable provisions cannot be severed from the arbitration agreement.*

 The final question is whether the presence of the unconscionable provisions warrants a refusal to enforce the entire arbitration agreement, or whether the offending provisions may be limited or severed to avoid an illegal result. (Civ. Code, § 1670.5, subd. (a); *Armendariz, supra,* 24 Cal.4th at pp. 121–124.) "The overarching inquiry is whether " ' "the interests of justice . . . would be furthered" ' by severance." (*Armendariz, supra,* 24 Cal.4th at p. 124, quoting *Beynon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 713 [161 Cal.Rptr. 146].) "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra,* 24 Cal.4th at p. 124.)

 The arbitration agreement contains several serious defects, including the unlawful provisions shortening the statute of limitations, the cost-sharing provision and the unconscionably unilateral arbitration clause. "Such multiple defects indicate a systematic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124; *Mercuro, supra,* 96 Cal.App.4th at p. 185.) The substantively unconscionable provisions cannot be cured by striking or limiting application of identifiable provisions. Rather, the arbitration agreement is so " 'permeated' by unconscionability [it] could only be saved, if at all, by a reformation beyond our authority." (*Mercuro, supra,* 96 Cal.App.4th at p. 182; *Armendariz, supra,* 24 Cal.4th at pp. 122–125.) Because the FireMaster arbitration agreement is permeated with illegality and unconscionability, it is unenforceable and the trial court erred in compelling arbitration of Martinez's claims.

2. *The trial court lacked authority to appoint an arbitrator after AAA refused to conduct the arbitration.*

Martinez contends the trial court erred in appointing an arbitrator after AAA refused to conduct the arbitration, and this error constitutes a separate and independent basis for reversal of the judgment. His contention is correct.

The arbitration agreement requires that the arbitration be conducted in accordance with specific procedures promulgated by the AAA and, in this case, by an arbitrator licensed to practice law in California. The agreement also outlines a specific procedure by which the parties must select an arbitrator. Under the agreement, Martinez submitted his claims to the AAA, but it refused to conduct a hearing. Martinez then sought to restore the matter to the civil active list, an action which FireMaster opposed, arguing the trial court instead should appoint another arbitrator under Code of Civil Procedure section 1281.6 (hereafter, section 1281.6). The court agreed and appointed another arbitrator. However, it erred in doing so.

 Section 1281.6 enables the trial court to compel compliance with a method for selecting an arbitrator specified in an arbitration agreement: "If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed. If the arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed. In the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails to act and his or her successor has not been appointed, the court . . . shall appoint the arbitrator." FireMaster insists the court correctly relied upon this statute because the arbitration agreement provides only that AAA's procedures are followed, not that AAA itself conduct the arbitration. FireMaster is incorrect. The arbitration agreement's requirement for resolution of the present dispute "in accordance with" pertinent AAA procedures means that the arbitration must take place before that designated agency, that is, in an AAA forum.

Division One of this district recently held, in a matter markedly similar on this point, "Section 1281.6 is of no relevance here. . . . [¶] . . . 'If an arbitration agreement designates an exclusive arbitral forum (e.g., the NYSE), and arbitration in that forum is not possible, courts may not compel arbitration in an alternate forum by appointing substitute arbitrators . . . .' " (*Alan v. Superior Court* (2003) 111 Cal.App.4th 217, 227–228 [3 Cal.Rptr.3d 377] (*Alan*).) *Alan* involved an action against securities brokers brought under an agreement requiring the conduct of all arbitrations in a forum convened by

and subject to the rules of the New York Stock Exchange (NYSE) or the National Association of Securities Dealers (NASD). The plaintiff filed a civil action and the brokers moved to compel arbitration under the agreement. (*Id.* at p. 223.) At the time, however, the NYSE and the NASD were engaged in a dispute with the state of California over new ethical standards for private arbitrators. Both organizations refused to conduct any arbitrations in California, unless the claimant agreed to waive the ethical standards or to have the arbitration conducted outside of California. (*Id.* at p. 222.) Plaintiff refused to agree to either alternative. (*Id.* at p. 223.) After the trial court ordered the parties into arbitration, plaintiff sought a writ of mandate. (*Ibid.*) Division One granted the writ. It concluded the trial court lacked the authority to order the parties to arbitrate in an alternate forum when arbitration in the forum designated in the agreement was not possible. (*Id.* at pp. 227–228.)

The parties in this case agreed to an AAA forum, but AAA refused to participate. " '[A]n agreement to arbitrate before a particular forum is as integral a term of a contract as any other, which courts must enforce.' " (*Alan, supra,* 111 Cal.App.4th at p. 228, quoting *Wall Street Associates v. Becker Paribas, Inc.* (S.D.N.Y 1993) 818 F.Supp. 679, 683, affd. (2d Cir. 1994) 27 F.3d 845.) "Thus, if [AAA], the forum selected by [the parties]— declines to hear the matter, the dispute is to be tried in court." (*Alan, supra,* at p. 224.) Section 1281.6 is " 'simply a legislative means of implementing [California's] policy in favor of arbitration by permitting parties to an arbitration contract to expedite the *arbitrator selection process.*' " (*Alan, supra,* at p. 227, quoting *Engalla v. Kaiser Permanente Medical Group., Inc.* (1997) 15 Cal.4th 951, 981 [64 Cal.Rptr.2d 843, 938 P.2d 903], italics added in *Alan.*) Section 1281.6 does not permit the trial court to choose an alternative forum when the chosen forum refuses to hear the case. "If an arbitration agreement designates an exclusive arbitral forum . . . , and arbitration in that forum is not possible, courts may not compel arbitration in an alternative forum by appointing substitute arbitrators . . . ." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2002) ¶ 5:355.1, p. 5-175 (rev. # 1, 2003), italics omitted.)

The judgment must be reversed for two independent reasons. First, the court erred in granting FireMaster's motion to compel arbitration. Second, the trial court erred in denying Martinez's motion to restore the matter to the active civil litigation calendar after AAA refused to conduct the arbitration.[7]

---

[7] Our conclusion also evinces the need to reverse the court's denial of Martinez's motion to vacate the arbitration award and to vacate that award.

## DISPOSITION

The judgment is reversed. The cause is remanded and the trial court is directed to: (1) vacate its April 20, 2001 order granting FireMaster's petition to compel arbitration and to stay the proceedings pending completion of arbitration; (2) vacate its August 14, 2001 order denying Martinez's motion to lift the stay and return the case to the civil active list; (3) vacate the March 7, 2003 judgment confirming the arbitration award; and (4) restore this matter to its litigation calendar for further proceedings consistent with this opinion. Martinez is awarded his costs on appeal.

Cooper, P. J., and Rubin, J., concurred.