[No. B149385. Second Dist., Div. Eight. May 3, 2002.]

SUSAN BUCKNER et al., Plaintiffs and Respondents, v.
MARK W. TAMARIN, Defendant and Appellant.

## COUNSEL

Bonne, Bridges, Mueller, O'Keefe & Nichols, George E. Peterson; Schmid & Voiles and Kathleen D. Marrero for Defendant and Appellant.

Eroen & Eroen and Robert C. Eroen for Plaintiffs and Respondents.

## OPINION

**RUBIN, J.**—Appellant Mark W. Tamarin, M.D., appeals the trial court's denial of his petition to compel arbitration of respondents' wrongful death claim against him. After review, we affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

Appellant Dr. Mark W. Tamarin was decedent Paul Clifford's doctor. Clifford had signed a medical arbitration agreement covering any dispute over his care. The agreement, which applied to all claims including wrongful death, stated, "It is the intention of the parties that this agreement bind all parties whose claims may arise out of or relate to treatment or services provided by [appellant Dr. Tamarin] including any . . . heirs of the patient [Paul Clifford] . . . ." (Code Civ. Proc., §§ 1283, 1295 [permit arbitration of wrongful death claims].)

Clifford died following surgery by Dr. Tamarin. His adult daughters, respondents Susan Buckner, Caroline Clifford, and Colleen Gillespie, sued

Dr. Tamarin for wrongful death. They alleged he had negligently operated on their father and then tried to conceal his malpractice by stating on the death certificate that the cause of death was a heart attack.

Dr. Tamarin filed a petition to compel arbitration. Respondents replied they were not obligated to arbitrate their claims because they were not parties to the arbitration agreement as their father had no authority to waive their right to sue. The court agreed and denied the petition to arbitrate. This appeal followed. (Code Civ. Proc., § 1294, subd. (a) [order denying petition to compel arbitration is an appealable order].)

STANDARD OF REVIEW

■ The relevant facts and arbitration agreement's language are undisputed. Accordingly, we independently review the agreement's effect. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684 [99 Cal.Rptr.2d 809].)

DISCUSSION

■ Dr. Tamarin contends Paul Clifford's signature was sufficient to compel his adult daughters to submit their claims to arbitration. He argues the court therefore erred in denying arbitration. We find no error.

Generally speaking, one must be a party to an arbitration agreement to be bound by it. "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. [Citation.]" (*Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358]; see also Code Civ. Proc., § 1281 [right to arbitration depends on contract].) Under three circumstances, however, someone can bind another person to a medical arbitration agreement without that other person's consent. First, an agent can bind a principal. (See, e.g., *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706 [131 Cal.Rptr. 882, 552 P.2d 1178].) Second, spouses can bind each other. (See, e.g., *Bolanos v. Khalatian* (1991) 231 Cal.App.3d 1586, 1591 [283 Cal.Rptr. 209], citing *Gross v. Recabaren* (1988) 206 Cal.App.3d 771, 781 [253 Cal.Rptr. 820].) And, third, a parent can bind a minor child. (See, e.g., *Pietrelli v. Peacock* (1993) 13 Cal.App.4th 943, 947 [16 Cal.Rptr.2d 688; *Bolanos v. Khalatian, supra,* 231 Cal.App.3d at p. 1591.) One court recently summarized these exceptions as follows: "The common thread of all the above cases is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement. In the

absence of such a relationship, courts have refused to hold nonsignatories to arbitration agreements. . . ." (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 76 [100 Cal.Rptr.2d 683]; see also *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 242 [54 Cal.Rptr.2d 628].)

Respondents do not fall into any of the foregoing categories. Their father entered into the arbitration agreement solely for his own medical care. He was not their agent, they were not married to him, and they were not minors. He therefore lacked the authority to waive their right to a jury trial of their claims.

Appellant asks us to rely on *Herbert v. Superior Court* (1985) 169 Cal.App.3d 718 [215 Cal.Rptr. 477] (*Herbert*), to hold Clifford had the power to act on his adult daughters' behalf. In *Herbert*, the decedent husband was married and had eight children, three of whom were adults. The decedent, his wife, and their five minor children belonged to a group health plan, but the three adult children did not. (*Id.* at p. 720.) The group plan required arbitration of all claims, including those by heirs. (*Ibid.*) After the husband died, his widow and all their children sued for wrongful death. (*Id.* at p. 721.) The medical plan sought arbitration, which the trial court ordered for the widow and minor children, but denied for the adult children. (*Ibid.*)

On appeal, the *Herbert* court ordered the adult children to arbitrate their wrongful death claim. The court reasoned wrongful death is a single, joint, and indivisible claim possessed by all survivors; it cannot be split, and must be tried in one forum. (*Herbert, supra,* 169 Cal.App.3d at pp. 722, 725.) Because the widow and minor children were indubitably obligated to arbitrate their claim, it was impractical, the court reasoned, to let the adult children pursue their claims outside arbitration. (*Id.* at p. 725.)

*Herbert* is distinguishable. In *Herbert*, the wrongful death claimants fell into three groups. For two of those groups—the widow and minor children— the decedent's right to bind them to arbitration rested on well-grounded legal principles involving spouses and parents and children. For the third group, however—adult children who did not belong to the health plan—the decedent had no authority to act. The *Herbert* court nevertheless found that practical considerations involving the indivisibility of wrongful death claims permitted the arbitration agreement to sweep up the adult children. *Herbert*'s rationale is inapplicable here because respondents are not dividing their wrongful death claims between different forums. Accordingly, *Herbert* does not apply.

Since *Herbert* was decided, two later decisions have described it as holding that an arbitration agreement can, as Dr. Tamarin urges, bind

nonsignatory heirs. Neither decision involved nonsignatory adult heirs: the first, *Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508 [26 Cal.Rptr.2d 725], involved arbitration by a spouse; the second, *County of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra,* 47 Cal.App.4th 237, refused to compel arbitration of third party indemnity claims. Their descriptions of *Herbert* are thus dicta. Moreover, their citations to *Herbert* occurred in discussions canvassing the law of arbitration agreements and did not consider *Herbert*'s reasoning. (*Mormile v. Sinclair, supra,* 21 Cal.App.4th at p. 1511; *County of Contra Costa v. Kaiser Foundation Health Plan, Inc., supra,* 47 Cal.App.4th at p. 243.) Their descriptions of *Herbert*'s holding removed from its rationale make their descriptions overly broad. Neither decision demonstrates the trial court erred here in refusing arbitration.

Finally, Dr. Tamarin contends the trial court violated a rule requiring courts to interpret ambiguous arbitration agreements in favor of arbitration. That rule does not apply here. The arbitration agreement was unambiguous and plainly purported to bind Clifford's heirs. The issue before us, however, is Clifford's power to bind his adult daughters to arbitration. For the reasons we have explained, he had no such authority.

### DISPOSITION

The order denying the petition for arbitration is affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Boland, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 14, 2002. Kennard, J., and Moreno, J. were of the opinion that the petition should be granted.