[No. B152764. Second Dist., Div. Seven. June 12, 2002.]

TERI PAGARIGAN et al., Plaintiffs and Respondents, v.
LIBBY CARE CENTER, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## Counsel

Huskinson & Brown, Brian C. Carlin and David W. T. Brown for Defendants and Appellants.

Houck & Balisok, Russell S. Balisok, Steven Wilheim and Carol S. Jimenez for Plaintiffs and Respondents.

## Opinion

**JOHNSON, J.**—Libby Care Center, Inc., and Longwood Management Corporation are defendants in an action for personal injuries brought by plaintiffs Teri, Mary and John Pagarigan as successors in interest to their deceased mother, Johnnie Pagarigan, and for wrongful death brought in their own right. Defendants appeal from a trial court order denying their petition to compel arbitration of plaintiffs' claims. We affirm.

## FACTS AND PROCEEDINGS BELOW

Johnnie Pagarigan was admitted in a comatose state to Magnolia Gardens Convalescent Hospital (Magnolia Gardens), a skilled nursing facility. She remained there for nearly a year. Plaintiffs allege that while Ms. Pagarigan was under the care and treatment of Magnolia Gardens she developed a severe pressure sore on her lower back measuring approximately five by eight inches; she lost weight and became malnourished and dehydrated. In addition, Ms. Pagarigan developed an infection at the site where a gastric tube had been surgically implanted in her abdomen. The infection abscessed and her abdomen became protuberant and discolored. Ultimately Ms. Pagarigan was transferred to a hospital where surgeons treated the abscess. The infection was by then too far advanced and her condition too debilitated to be treated successfully. Ms. Pagarigan was sent home in a pre-morbid condition for care in a hospice-like setting and she soon died.

Plaintiffs brought an action as Ms. Pagarigan's successors in interest against Libby and Longwood, alleging that at the time of Ms. Pagarigan's injuries defendants were the operators of Magnolia Gardens and they are liable to her for negligence, intentional infliction of emotional distress, elder abuse and fraud. The complaint also alleges a cause of action on plaintiffs' own behalf for wrongful death.

Defendants filed a petition to compel arbitration based on two arbitration agreements signed by plaintiffs Teri and Mary Pagarigan approximately a week after their mother was admitted to Magnolia Gardens. Both agreements identify Johnnie Pagarigan as "resident" and Magnolia Gardens as "facility." One agreement states "any dispute between resident and facility, including actions for any injury or death arising from facility's negligence, medical malpractice, intentional tort, and/or statutory causes of action (including all Welfare and Institutions Code sections) will be determined by submission to arbitration as provided by California law, and not by lawsuit or resort to court process . . . ." The other agreement is similarly worded except it is specifically applicable "as to medical malpractice, as to whether any medical services rendered . . . were unnecessary or unauthorized or were improperly, negligently or incompetently rendered . . . ."

Plaintiffs opposed arbitration on 12 separate grounds. The trial court denied the petition without specifying its reasons and defendants filed a timely notice of appeal.

As explained below, we have identified two independently adequate reasons for affirming the trial court's ruling: (1) defendants failed to produce

any evidence Teri or Mary Pagarigan had authority to enter into an arbitration contract on behalf of their mother; and (2) defendants failed to provide any evidence they were entitled to seek enforcement of the arbitration agreements.[1]

DISCUSSION

## I. *Defendants Failed to Produce Any Evidence Teri or Mary Pagarigan Had the Authority to Enter into an Arbitration Contract on Behalf of Their Mother.*

██  Defendants bore the burden of establishing a valid agreement to arbitrate.[2] Defendants admit Johnnie Pagarigan did not sign either arbitration agreement. They further admit Ms. Pagarigan was mentally incompetent at the time she was admitted to Magnolia Gardens and at the time her daughters signed the arbitration agreements approximately a week later. There was no evidence Ms. Pagarigan had signed a durable power of attorney. It necessarily follows Ms. Pagarigan lacked the capacity to authorize either daughter to enter into the arbitration agreements on her behalf. Consequently no valid arbitration contract exists.

Defendants attempt nevertheless to evade the fatal consequences of the undisputed facts.

First, defendants argue the signatures of Teri and Mary Pagarigan on the arbitration agreements "prove they represented themselves as having the power to bind Johnnie Pagarigan to these arbitration documents." This may be true but it is totally irrelevant. ██  A person cannot become the agent of another merely by representing herself as such. To be an agent she must actually be so employed by the principal[3] or "the *principal* intentionally, or by want of ordinary care, [has caused] a third person to believe another to be

---

[1] In light of these conclusions we need not address plaintiffs' remaining arguments. We need not decide, for example, whether Ms. Pagarigan had the power to bind her adult children to arbitration. Our colleagues in Division Eight of this court held in *Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 143 [119 Cal.Rptr.2d 489] that a parent could not bind his adult children to arbitrate their wrongful death cause of action against defendant. The rule may be different, however, when the adult children sue not on their own cause of action but as successors in interest to the deceased parent's causes of action. (See *Grant v. McAuliffe* (1953) 41 Cal.2d 859, 864 [264 P.2d 944, 42 A.L.R.2d 1162].) We also do not decide whether the arbitration agreement violates Health and Safety Code section 1599.65 or Code of Civil Procedure section 1295 or is void for vagueness or as an adhesion contract.

[2] *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 356 [72 Cal.Rptr.2d 598].

[3] Civil Code section 2299 (actual agency).

his agent who is not really employed by him."[4] ▮ Defendants produced no evidence Ms. Pagarigan had ever employed either of her daughters as her agent in any capacity. Nor did defendants produce any evidence this comatose and mentally incompetent woman did anything which caused them to believe either of her daughters was authorized to act as her agent in any capacity.

Defendants' second argument is equally lacking in merit. Defendants contend Teri and Mary Pagarigan had authority to bind their mother to an arbitration agreement merely by being their mother's next of kin. In support of this argument, defendants cite Health and Safety Code sections 1418.8, 1599.65 and California Code of Regulations, title 22, section 72527.

Health and Safety Code section 1418.8 describes how the physician attending a patient in a nursing home goes about obtaining informed consent for treatment when the patient lacks the capacity to give or withhold her consent and "there is no person with the legal authority" to make the decision for her.[5] Under subdivision (c) of the statute the term "person with legal authority" includes the patient's "next of kin." Defendants do not explain how the next of kin's authority to make medical treatment decisions for the patient at the request of the treating physician translates into authority to sign an arbitration agreement on the patient's behalf at the request of the nursing home.

The contention based on Health and Safety Code section 1599.65 is even more strained. Subdivision (a) of that statute requires a nursing home to explain its admission contract to the prospective resident and obtain the resident's signature on the contract at or prior to the time of admission, "[u]nless the prospective resident . . . is unable to understand and sign the contract because of his or her medical condition . . . ." Defendants direct us to the portion of subdivision (a) which states: "This provision does not preclude the facility from obtaining the signature of an agent, responsible party, or a legal representative, if applicable." Defendants then cite to California Code of Regulations, title 22, section 72527 which sets forth the nursing home patient's "bill of rights." Subdivision (c) of section 72527 states: "If a patient lacks the ability to understand these rights . . . the patient's representative shall have the rights specified in this section to the extent the right may devolve to another . . . ." Subdivision (d) of section 72527 provides: "Persons who may act as the patient's representative include . . . [the] patient's next of kin . . . ."

Putting these seemingly unrelated and irrelevant statutes and regulations together, defendants maintain that since the state conferred on Teri and Mary

---

[4]Civil Code section 2300, italics added (ostensible agency).
[5]Health and Safety Code section 1418.8, subdivision (a).

Pagarigan the authority to sign their mother's admission agreement, make medical treatment decisions on her behalf and enforce her rights as a nursing home patient "to argue ·neither had the authority to sign the arbitration agreement is counterintuitive and inconsistent with legislative intent."

It appears to us just the opposite is true. The statutes and regulations cited by defendants demonstrate that when the Legislature and the Department of Health Services wanted to confer authority on next of kin to take some action on behalf of a nursing home resident they knew how to say so. It would indeed be "counterintuitive and inconsistent with legislative intent" to hold that by failing to confer authority on the next of kin to bind a nursing home resident to an arbitration agreement the Legislature and administrative agency intended to confer the very authority they withheld.

II.   *Defendants Failed to Provide Any Evidence They Were Entitled to Seek Enforcement of the Arbitration Agreements.**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

The order denying the petition to compel arbitration is affirmed. Respondents are awarded their costs on appeal.

Lillie, P. J., and Woods, J., concurred.

---

*See footnote, *ante*, page 298.