[No. B171724. Second Dist., Div. Eight. Jan. 14, 2005.]

LINDA PROVENCIO et al., Plaintiffs and Respondents, v.
WMA SECURITIES, INC., Defendant and Appellant.

COUNSEL

Proskauer Rose, Michael A. Firestein and Joshua J. Pollack for Defendant and Appellant.

Law Offices of Jeffrey A. Kopczynski and Jeffrey A. Kopczynski for Plaintiffs and Respondents.

OPINION

**RUBIN, J.**—Defendant WMA Securities, Inc., appeals from the order denying its petition to compel arbitration of an action for fraud, breach of contract, and other related claims brought by plaintiffs Linda Provencio and Lori Berke. For the reasons set forth below, we affirm the order.

## FACTS AND PROCEDURAL HISTORY

 Linda Provencio and Lori Berke transferred their individual retirement accounts to defendant WMA Securities, Inc. (WMA), then relied on WMA for investment advice. Provencio and Berke sued WMA for breach of fiduciary duty, fraud, and breach of contract, along with other related causes of action, alleging that they were the victims of bad advice by WMA.[1] In response to the complaint, WMA brought a petition to compel arbitration. (Code Civ. Proc., § 1281.2.)[2] According to WMA, the investment services contracts that respondents signed with it required their dispute to be arbitrated by the National Association of Securities Dealers (NASD), pursuant to the NASD's rules and procedures. Respondents opposed the petition on several grounds, including one we find convincing—that WMA was out of business and no longer a member of NASD, thereby precluding arbitration by NASD without respondents' written consent. The trial court denied the petition, and WMA contends the trial court erred.[3]

## DISCUSSION

 Under section 1281.2, one party to a written arbitration agreement may petition the court to compel other parties to arbitrate a dispute that is

---

[1] We will sometimes refer to Provencio and Berke collectively as respondents. Respondents also named several other entities and individuals as defendants, but none is involved in this appeal.

[2] All further section references are to the Code of Civil Procedure.

[3] Although the parties have again briefed all the issues raised below, we address only the one we find dispositive: the preclusive effect of WMA's failure to remain a member of the NASD.

covered by their agreement. (§ 1281.2.) This section creates a summary proceeding for resolving such petitions. The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. The party opposing the petition must meet the same evidentiary burden to prove any facts necessary to its defense. The trial court acts as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) When there is no conflicting evidence regarding the interpretation of an arbitration agreement, we exercise our independent judgment to determine as a matter of law whether the agreement applies to a controversy. Where the trial court's decision of arbitrability is based on disputed facts, however, the substantial evidence standard applies. Under that test, we must: accept the trial court's resolution of disputed facts when supported by substantial evidence; presume the court found every fact and drew every permissible inference necessary to support its order; and defer to its determinations regarding the credibility of witnesses and the weight of the evidence. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71 [100 Cal.Rptr.2d 683].)

■ The right to arbitrate depends on the terms of a contract. (*United Public Employees v. City and County of San Francisco* (1997) 53 Cal.App.4th 1021, 1026 [62 Cal.Rptr.2d 440].) Respondents' contract provided that "unless unenforceable due to federal or state law, any controversy arising out of or related to [their] accounts, the transactions with WMA[], its officers, directors, agents, registered representatives and/or employees for [us] related to this agreement or breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the [NASD]. Such arbitration shall follow the procedures as set forth by a national arbitration committee of the NASD." Pursuant to this provision WMA asked the court to compel respondents to arbitrate their dispute before the NASD.

Respondents did not dispute that the arbitration provision applied to the types of claims made in their complaint. Instead, they challenged its applicability on other grounds, including: (1) no agreement existed between Berke and WMA; (2) the arbitration clause did not comply with certain securities industry rules; (3) the agreement between Provencio and WMA had not been authenticated and appeared to be a forgery; and (4) arbitration before the NASD was no longer possible because WMA had gone out of business and was no longer a registered NASD member.

■ The arbitration agreement was, by its terms, subject to NASD's rules. In opposition to WMA's petition, respondents submitted the declaration of securities lawyer Steve Buchwalter. According to the declaration, Buchwalter had represented clients in more than 500 matters before the NASD, was

familiar with NASD's rules, and had testified before the United States Senate regarding NASD arbitrations. Attached to his declaration was a copy of NASD rule 10301(a), which stated that claims by customers against NASD members were "ineligible for submission to arbitration" as to: "(1) A member whose membership is terminated, suspended, canceled, or revoked; [¶] (2) A member that has been expelled from the NASD; or [¶] (3) A member that is otherwise defunct." In such cases, the claim may be heard by the NASD only if the customer agrees in writing to do so. Buchwalter said he had reviewed the NASD's membership records and learned that WMA was no longer a registered member of NASD. He supported this claim by including a photocopy print out of a computer screen from the NASD's website showing that WMA was no longer registered as a member. He also supplied a declaration from a WMA official acknowledging that WMA had gone out of business in April 2002.

■ When the parties to a contract agree to arbitrate any disputes before a particular forum, that provision becomes an integral part of their contract. If that forum is not available to hear the dispute, then a petition to compel arbitration may not be granted. (*Alan v. Superior Court* (2003) 111 Cal.App.4th 217, 224, 227–228 [3 Cal.Rptr.3d 377] (*Alan*).) In *Alan* our colleagues in Division One were confronted with a claim against a securities dealer where NASD arbitration was required, but might not be possible because NASD was no longer arbitrating in California due to a dispute over the application of the state's ethical rules for arbitrators. Because the arbitration agreement included a choice of forum clause, and because NASD was willing to arbitrate the dispute in other states, the Court of Appeal held the trial court should determine under applicable choice of law standards whether arbitration in other states was appropriate. If so, a forum was available and arbitration could proceed. If not, then the required forum for arbitration was not available, and state court action could proceed. (*Id.* at pp. 229–230.)

WMA does not contend that arbitration was appropriate in any forum other than the NASD.[4] Based on Buchwalter's evidence, respondents contend that arbitration before the NASD was no longer available, meaning they were free to press their action in court. We agree that NASD rule 10301 justified the court's order, but not because, as suggested in *Alan*, NASD was unavailable as a forum. As we read the parties' arbitration agreement through the filter of rule 10301, arbitration before the NASD is mandatory unless WMA becomes defunct or is no longer an NASD member. Under those conditions, arbitration before the NASD is allowed, but only at the option of respondents. Strictly speaking, therefore, the issue is not whether NASD is available as a forum: it is available if respondents choose to make it available. Instead, the issues are

---

[4] As noted earlier, its moving and reply papers specifically asked the court to compel arbitration before the NASD and did not mention any other possible forums.

whether WMA is defunct or no longer a member of NASD and whether, despite WMA's status as a nonmember of NASD, respondents have agreed to arbitrate their dispute in that forum.

It is undisputed that WMA is no longer an NASD member and that respondents have not provided the written consent to arbitrate a claim before the NASD against a nonmember. In its reply papers filed in the trial court, WMA submitted the declaration of its president, Barry Clause. Clause admitted that WMA went out of business in April 2000 and did not dispute that WMA was no longer a member of the NASD. He did state that since then, "the NASD has accepted for arbitration, without the claimant's consent and notwithstanding that [WMA] is no longer a member of the NASD, claims involving [WMA]." Based on this, WMA contends that arbitration before the NASD is still possible.

In evaluating this evidence, we are guided by the applicable standard of review discussed earlier. First, we presume the trial court simply disbelieved this testimony, especially in light of the absence of any meaningful background information, including the number of cases involved, the nature of the claims, and whether the customers later gave their consent to the proceedings. (*Shapiro v. Equitable Life Assur. Soc.* (1946) 76 Cal.App.2d 75, 96–97 [172 P.2d 725] [trier of fact is free to disbelieve even uncontradicted testimony of witness; in doing so, it could consider failure to produce available witnesses or evidence].) Second, even if Clause's evidence were accepted, implicit in WMA's reliance upon it is the dubious contention that the NASD's occasional disregard of its own rules in other cases somehow strips respondents of their contractual right to rely on and enforce those rules. WMA has not articulated such an argument and does not cite any applicable authority to support it. To the extent WMA relies on Clause's evidence to support a different legal interpretation of the arbitration provision, we therefore deem the issue waived. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].)[5]

---

[5] There is no suggestion that the parties' investment services contract that contains the arbitration clause satisfies the "writing" requirement in NASD rule 10301(a) for arbitration of claims involving nonmembers. The NASD rule states: "A claim involving a member in the following categories [terminated, suspended, canceled, revoked, expelled or defunct member] shall be ineligible for submission to arbitration under the Code unless the customer agrees in writing to arbitrate the claim *after it has arisen.*" The portion of the rule that we have italicized makes it clear that the written consent to arbitrate must occur after the claim has arisen; obviously, the underlying agreement that contains the arbitration clause—signed when there was no dispute between the parties—*preceded* any such claim.

## DISPOSITION

For the reasons set forth above, the order denying WMA's petition to compel arbitration is affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Boland, J., concurred.